## Commonwealth v. Campbell

*Thomas R. Haist,* assistant counsel, for the commonwealth.

*John J. Connelly Jr.,* for defendant.

DOWLING, *J.*, November 27, 1987—The issue in this case is whether a delay of over one year, which is directly attributable to a police officer's failure to notify the Department of Transportation pursuant to 75 Pa.C.S. §1547(b)(1) and a motorist's election to proceed under ARD rather than contest a charge of driving under the influence, is sufficient to sustain an appeal from the department's suspension of the motorist's license for refusing to submit to a breathalyzer test. For the reasons that follow, we will sustain the appeal.

The history of this case is as follows: On April 23, 1986, petitioner was arrested and charged with driving under the influence of alcohol, 75 Pa.C.S. §3731(a)(1). He refused to submit to a breathalyzer test despite the police officer's warnings that his license would be suspended if he did not comply. A

preliminary hearing was held on June 2, 1986 at which the charge was bound over for trial. Petitioner was arraigned on August 1, 1986 and was accepted into the ARD program on September 26, 1986. At the ARD hearing, petitioner relinquished his license to the clerk of court for a period of 180 days. At no point during these proceedings was petitioner informed by the department that his license would be suspended for the section 1547(b) refusal.

Thereafter, the arresting police officer filed a "new" report of refusal affidavit on April 30, 1987 with the department. The department then informed petitioner that his license would be suspended for 12 months, effective June 19, 1987 as a result of the April 26, 1986 refusal. Petitioner appealed the suspension to this court, and a hearing was held on September 23, 1987.

The penalty for refusing to submit to a breathalyzer test is a mandatory 12-month suspension of operating privileges. 75 Pa.C.S. § 1547(b)(1). Knowing this, petitioner opted to pursue the driving under the influence charge through ARD, and suffer a six-month suspension, because he believed that his license would not be suspended for the refusal. It was not until May of 1987, over one year after his arrest, that petitioner first heard that his license would be suspended for the section 1547 violation.

The arresting officer testified that he sent a "report of refusal affidavit" to the department shortly after the arrest. The department, however, has no record of this report. The "new" report was sent to the department on April 30, 1987 after the officer found the original report in the district justice's case file. In either case, whether the original report was sent or not, the court finds the delay attributable to the department.

It has been stated many times that administrative delay is a ground for vacating actions by the DOT when the delay causes the licensee "to believe that his privileges will not be impaired and to change his circumstances to his detriment." *Department of Transportation, Bureau of Traffic Safety v. Davis*, 106 Pa.Commw. 613, 527 A.2d 607, 609 (1987) (quoting *Department of Transportation, Bureau of Traffic Safety v. Lyons*, 70 Pa.Commw. 604, 453 A.2d 730 (1982). It has also been held that "no delay can be chargeable to the department before it is in receipt of the certification of conviction." *Department of Transportation, Bureau of Traffic Safety v. Parr*, 56 Pa.Commw. 203, 424 A.2d 604, 605 (1981) and cases cited therein. Admittedly, the quoted language of *Parr* would appear to lay petitioner's claim to rest inasmuch as the department promptly notified petitioner upon receiving the "new" report of refusal. However, on closer examination, the rule that the department is not chargeable with delay until it receives notice is subject to qualification given the procedural posture of the cases cited for that proposition.

In *Parr*, supra, the delay was attributable to a district justice's failure to notify the department of a summary vehicle code offense. In *Department of Transportation, Bureau of Traffic Safety v. Lyons*, 70 Pa.Commw. 604, 453 A.2d 730 (1982), the delay was solely attributable to the prothonotary's failure to certify to the department the trial court's denial of an appeal. In *Davis,* supra, an unexplained mixup between the trial court and the prothonotary's office resulted in an 18-month delay. In *Department of Transportation, Bureau of Traffic Safety v. Thompson*, 17 Pa.Commw. 505, 333 A.2d 478 (1975) the delay was due to a supersedeas which the motorist himself had requested pending the outcome of his

appeal. It was only in *Department of Transportation, Bureau of Traffic Safety v. Kirk*, 48 Pa.Commw. 429, 410 A.2d 95 (1980), that the delay was found to be "administrative" in that the department had failed to notify the motorist after it received notice of conviction.

In all of the aforementioned cases, the department was by statute required to wait for a "certification of conviction." The certification comes from either a district justice, prothonotary or clerk of court, thus the rule that the department cannot be charged with delay "when the delay is judicial." *Davis*, supra. In contrast, there is no judicial delay in the instant case. The charge which gave rise to the suspension is not one which requires judicial involvement unless the person files an appeal from the department's suspension. When a person refuses to submit to a breathalyzer test, section 1547(b)(1) mandates that "the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege. . . ." Here, the delay was attributable to the police officer's failure to notify the department. A police officer is not in any manner a member of the judiciary. The department argues that the officer, a municipal employee, is in no way connected with it and thus the department is not responsible for his delay.

We find this argument untenable. By statute, a police officer has a duty to forward a notice of refusal. If we were to hold that an officer, through sloth, ignorance or tactical decision, could wipe his hands clean of a failure to notify, by being permitted to file a notice some years after the infraction, the court would be sanctioning a rule that flies in the face of certainty, finality and most of all, fundamental fairness. Moreover, the police officer is in reality, a

member of the prosecuting team, which the department controls. It is not necessary to elaborate on the fact that the prosecution, in any criminal case, is subject to rigid time constraints when dealing with an accused. Although license suspension cases are civil, that does not justify allowing delays like the present to occur, particularly when the ability to drive an automobile is almost indispensible in this day and age.

Petitioner testified that he believed his operating privileges would not be suspended for the section 1547 refusal at the time he entered ARD. He also testified that had he known that his license would be suspended, he would have contested the driving under the influence charge, i.e., that he entered his plea in reliance on the delay. To now face an additional 12-month suspension, long after arrest and the initial six-month suspension, is obviously prejudicial to petitioner.

In *Department of Transportation, Bureau of Traffic Safety v. Hosek*, 3 Pa.Commw. 580, 284 A.2d 524 (1971), the court upheld a finding of prejudice sufficient to sustain an appeal where the motorist obtained new employment that required a driver's license and had also purchased insurance to operate an automobile in reliance on the department's inaction. In the present case, petitioner pleaded guilty in reliance on the department's delay. He is now bound by that plea. We find these circumstances to be at least as prejudicial as in *Hosek*.

Accordingly, we enter the following

### ORDER

And now this November 27, 1987, petitioner's appeal is sustained.